H. MICHAELYAN, INC., Appellant, *v.* NEW JERSEY FIDELITY AND PLATE GLASS INSURANCE COMPANY, Respondent.

First Department, April 11, 1930.

*Alexander Holtzoff* [*Percival S. Jones* with him on the brief], for the appellant.

*Lyman A. Spalding* of counsel [*John H. Jackson* with him on the brief; *Spalding & McCabe*, attorneys], for the respondent.

FINCH, J. This appeal presents an interesting issue of fact as to whether the defendant was negligent in the handling of its certified copies of a power of attorney so that a manager of the defendant was held out as continuing to have a power of attorney which had in fact been revoked. The action was brought to obtain a declaratory judgment adjudging that an agreement guaranteeing a note was a binding obligation of the defendant. After a trial before the court without a jury, the complaint was dismissed.

The facts in brief are as follows: Plaintiff is a dealer in rugs and tapestries. About the middle of December, 1927, plaintiff sold and delivered to third parties certain rugs. Thereafter it accepted in payment for said rugs the promissory note of a corporation controlled by the purchaser of the rugs. Said note was antedated May 10, 1927, due in twelve months and nine days after date. At the same time the purchaser of the rugs delivered to the plaintiff a guaranty executed by the defendant surety company unconditionally guaranteeing the payment of the note at maturity. The salesman of the rugs gave a receipt in the name of the plaintiff reading, " Received payment by note." The salesman delivered the note and the guaranty to the president of the plaintiff, who, within two days thereafter, sought to discount the note at a National bank. A day or two later the bank refused to discount, suggesting that the president of the plaintiff inquire of the defendant the reason for the refusal. On January 5, 1928, the plaintiff wrote to the defendant asking for a confirmation of the validity of the guaranty. On January 16, 1928, the attorneys of defendant wrote to the attorney of plaintiff informing him that the guaranty was not executed by the defendant or with its authority, and unequivocally repudiating liability. The salesman then took the note and guaranty back to the attorney for the third parties who purchased the rugs. This attorney gave the salesman a general assurance that the guaranty " was perfectly O. K." and told him to send it through again. The summons in this action is dated January 18, 1928. In thus converting the sale from one for cash to one upon a long time credit, the plaintiff proved its reliance upon the guaranty, and if it had thereafter attempted to retake the rugs from the purchaser thereof, the burden would have been cast upon it to prove at its peril that the guaranty was fraudulently given. The question which remains is whether the defendant is estopped by its negligence from proving lack of authority.

At the time of the delivery of the guaranty to the salesman there was pinned to it a copy of the power of attorney of Devoe, certified to be a copy by an assistant secretary of the defendant who was duly authorized, empowering Devoe to execute such instruments on behalf of the defendant. The power of attorney appeared from the copy to have been acknowledged on October 8, 1925. The certificate of the assistant secretary was dated and sworn to May 10, 1927, which was the date of the note and guaranty in suit. Concededly the assistant secretary who signed the certified copy was one of four assistant secretaries who were empowered to sign such certified copies as were needed in the business of defendant. It also appears that it was " customary " for this assistant

secretary to provide a copy to Devoe upon being informed by him that he needed a copy. It appears that the plaintiff had had no prior dealings with the defendant. It further appears that on May 21, 1927, the power of attorney given to Devoe was revoked. Devoe, however, continued as manager of the surety department of the defendant up to June 30, 1927.

When the plaintiff showed that Devoe continued in his position as manager of the defendant up to June 30, 1927, and that it was customary for him to receive these duly signed certified copies of the power of attorney by which he was enabled to hold himself out as having a power of attorney to represent the defendant, the duty of going forward was shifted to the defendant to show that it had used due care in taking from Devoe such indicia of authority upon its revocation, and that he had obtained the same without want of due care on the part of the defendant.

The learned trial court did not consider any question of estoppel, since he expressly declared that no such question was in the case. He did, however, find that at the time of the delivery to the plaintiff of the paper purporting to be the guaranty of the defendant, plaintiff had notice of facts and circumstances sufficient to put it on inquiry concerning the validity of the purported guaranty, and that plaintiff did not exercise reasonable care in making no inquiry whatever before accepting the paper. Any such negligence on the part of the plaintiff, however, would have a bearing only had the liability of the defendant at the trial properly been predicated upon negligence. Instead at the trial the court considered the defendant's liability only from the viewpoint of whether or not there was actual authority. The issue of estoppel based upon negligence was not considered. The liability of defendant at the trial should have been based upon the defendant's act in permitting its employee Devoe to hold himself out as authorized to execute on its behalf the guaranty in question. As noted, the signed certificate certifying to the correctness of the copy of the power of attorney concededly was genuine. The real issue presented for determination was whether under all the facts in the case the defendant was estopped from showing as against the plaintiff that there had been a cancellation of the authority prior to the execution thereunder of the guaranty in suit. The principle applicable is well stated in *Marshall* v. *Reading Fire Ins. Co.* (78 Hun, 83). In that case the defendant had furnished to its agents policies in blank signed by one of its officers. Prior to September 20, 1892, the agent had been authorized to countersign and issue the policies. Upon that date the defendant revoked said authority. On March 1, 1893, the agent nevertheless issued a policy to the plaintiff. This the defendant claimed was

void and unauthorized. The court, however, held that the defendant was bound, stating: "No secret revocation of his [the agent's] power could absolve the defendant from liability to third persons dealing·upon the strength of such apparent authority without any knowledge of the revocation of such authority."

In the case at bar, therefore, when the plaintiff showed that the defendant's agent still continued to occupy the position of manager in the company and that he was possessed of the same indicia of authority which previously it had been customary to provide him with, it became the duty of the defendant to go forward and meet this proof by showing not only that the power of attorney had been duly canceled but that it had exercised due care in recalling from Devoe and properly safeguarding the duly signed certified copies of the power of attorney.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to. the appellant to abide the event.